UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HEATHER JARRARD, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| CAROLYN W. COLVIN, acting Commissioner of the Social Security Administration, | ) Cause No. 1:13-cv-386-WTL-DML ) ) ) ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Heather Jarrard requests judicial review of the final decision of Defendant, Carolyn W. Colvin, Commissioner of the Social Security Administration ("Commissioner"), denying Ms. Jarrard's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). The Court rules as follows.

### I. PROCEDURAL HISTORY

Heather Jarrard protectively filed for DIB on January 25, 2011, alleging she became disabled on September 28, 2010, due to chronic sinusitis and borderline intellectual functioning. Ms. Jarrard's application was denied initially on March 24, 2011, and again upon reconsideration on April 18, 2011. Following the denial upon reconsideration, Ms. Jarrard requested and received a hearing in front of an Administrative Law Judge ("ALJ"). A video hearing, during which Ms. Jarrard was represented by counsel, was held in front of ALJ Rebecca LaRiccia on February 1, 2012. The ALJ issued her decision denying Ms. Jarrard's claim on February 17, 2012. The Appeals Council also denied Ms. Jarrard's request for review on February 27, 2013.

After the Appeals Council denied review of the ALJ's decision, Ms. Jarrard filed this timely appeal.

## II. EVIDENCE OF RECORD

The evidence of record is aptly set forth in Ms. Jarrard's brief. Specific facts are set forth in the discussion section below where relevant.

## III. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R.

2

§ 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176.

## IV.  THE ALJ'S DECISION

The ALJ determined at step one that Ms. Jarrard had not engaged in substantial gainful activity since September 28, 2010, the alleged onset date. At steps two and three, the ALJ concluded that Ms. Jarrard has the severe impairments of borderline intellectual functioning and chronic sinusitis, R. at 19, but that her impairments, singly or in combination, did not meet or medically equal a listed impairment. At step four, the ALJ determined that Ms. Jarrard had the residual functional capacity ("RFC") to perform medium work with the following restrictions: "The claimant should avoid concentrated exposure to temperature extremes, humidity, pulmonary irritants such as dust, fumes, odors, gases, perfumes, and smoke. Based on her

mental impairments, the claimant is limited to understanding, remembering, and carrying out simple work in an environment with no fast-paced production standards." *Id*. at 21. Given that RFC, the ALJ determined that she could perform her past relevant work as a cashier[1] and stocker. Accordingly, the ALJ concluded that Ms. Jarrard was not disabled as defined by the Act.

## V. DISCUSSION

Ms. Jarrard alleges that the ALJ erred in assessing a mental RFC that did not account for all of her limitations. To this, she only raises one argument for the Court's review[2]—that the ALJ did not sufficiently explain her reasons for rejecting the opinions of Drs. Unversaw and Kladder. Dr. Unversaw completed a mental RFC assessment for Ms. Jarrard on March 18, 2011, concluding that she "is capable of unskilled, simple repetitive tasks on a sustained basis without special considerations." *Id*. at 339. On April 13, 2011, Dr. Kladder affirmed Dr. Unversaw's findings.

In her decision, the ALJ gave little weight to Dr. Unversaw's opinion stating:

> [T]he undersigned accords little weight to the assessment of DDS medical consultant and psychologist, Dr. Donna Unversaw . . . Given the claimant's testimony that repetitive type work is difficult for her, the undersigned finds that limiting the claimant to understanding, remember, and carrying out simple work in an environment with no fast-paced production standards is more consistent with the overall record, including the claimant's testimony, the results of her psychological evaluations and her reported activities of daily living.

---

[1] The Court notes that the DOT number the VE actually gave for Ms. Jarrard's past relevant work, 299.677-010, is that for a sales attendant, not a cashier.

[2] Ms. Jarrard initially also argued that the ALJ's mental RFC assessment was defective because it did not include her moderate difficulties in maintaining concentration, persistence, or pace. In her Reply, however, she withdrew this argument. *See* Pl.'s Reply at 1, n. 1.

4

*Id*. at 24. This conclusion was based in part on Ms. Jarrard's own testimony that "if I do . . . the same thing over and over again, they [her hands] go to sleep." *Id*. at 45.[3]

The ALJ did not agree with Dr. Unversaw's opinion that Ms. Jarrard was limited to repetitive work, noting that there was "no real difference demonstrated in [Ms. Jarrard's] present mental functional capabilities to those present at the time she engaged in her past work—her cognitive/intellectual functioning remains unchanged." *Id*. at 25. The Court agrees with Ms. Jarrard that this explanation is insufficient, especially in light of Ms. Jarrard's own testimony. Ms. Jarrard testified that she was fired from her position at Kmart due to "cashier problems." *Id*. at 39. She also stated that while she was employed at a Carson's department store, she "got frustrated" and "got a little bit confused" when she worked as a cashier. *Id*. at 36-37. She also testified in regard to being a cashier that "[w]hen there's too many people in a line, I get confused; I get frustrated." *Id*. at 39. She testified that she was fired from her position at Menards, where she worked as a stocker and paint mixer, due to "too many guest complaints" because she "couldn't understand most of the guests, I couldn't hear them." *Id*. at 37.

Thus, while the ALJ believed that Ms. Jarrard's mental functional capabilities had not deteriorated since the time she engaged in her past work, it is clear that Ms. Jarrard struggled in her previous employment. A reasonable inference to draw from this would be that Ms. Jarrard did not have the mental capacity to sustain her past employment. This would be supported by

---

[3] The Court notes that while the ALJ did take Ms. Jarrard's complaints of hand numbness into account in crafting her RFC, the ALJ found that "there is no underlying clinical diagnosis to support the claimant's assertions [of upper extremity numbness]. More specifically, the evidence does not include any objective medical testing or any evidence of medical treatment to corroborate the claimant's allegations in this regard." R. at 20. From the Court's own review of the record, the only relevant medical evidence with regard to this complaint appears to be a report from January 2000 when Ms. Jarrard complained of "progressive pain in her left wrist associated with repetitive movement at work." *Id*. at 373. Dr. Ronald Bennett recommended that Ms. Jarrard continue wearing a wrist splint that her mother bought for her. *Id*. In February 2000, Ms. Jarrard noted that the use of the splint alleviated some of her pain. *Id*.

5

Dr. Unversaw's conclusion that Ms. Jarrard is only mentally capable of performing repetitive tasks, which, as the VE noted, would eliminate employment as a cashier and a stocker. *See* R. at 50-51. That her previous employers may have been accommodating in hiring Ms. Jarrard and in maintaining her employment for a period of time despite her deficiencies does not mean she possessed the mental capacity to perform those jobs. The ALJ erred in crafting an RFC that is unsupported by the record simply so it would allow her to conclude at Step Four that Ms. Jarrard was capable of performing her past relevant work. Remand is thus required so that the ALJ may assign a proper mental RFC that is supported by the record.

## VI. CONCUSION

As set forth above, the ALJ in this case erred in assessing a mental RFC that is not supported by the record. The decision of the Commissioner is therefore **REVERSED AND REMANDED** for further proceedings consistent with this Entry.

SO ORDERED: 03/19/2014

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication